## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

JAMES JACKSON CARSWELL,    :
                               :

          Plaintiff,        :
                               :

         VS.           :
                               :   CIVIL No: 5:14-CV-0437-MTT-MSH

Dr. MICHAEL L. ROGERS, *et al.*,    :
                               :

        Defendants.     :
_____    :

## ORDER & RECOMMENDATION

Presently pending before the Court are Defendants Rogers and Ayers' motion to dismiss the Complaint (ECF No. 16), Defendant McClarin's motion to dismiss (ECF No. 23), and Defendants Fleming, Harrison, and Barrow's motion to dismiss (ECF No. 43). Also pending before the Court are Plaintiff's motions for judicial notice (ECF Nos. 48 & 50) and motion for preliminary injunction (ECF No. 38). For the reasons explained below, Plaintiff's motions for judicial notice are denied and it is recommended that Defendants Rogers and Ayers' motion to dismiss be denied in part and granted in part; Defendant McClarin's motion to dismiss be denied; Defendants' Barrow, Fleming, and Harrison's motion to dismiss be granted in part and denied in part; and Plaintiff's motion for preliminary injunction be denied.

## BACKGROUND

This action arises of out an alleged denial of adequate medical care. Plaintiff alleges that three physicians—Dr. Ayers, Dr. McClarin, and Dr. Rogers—knowingly

delayed or denied Plaintiff proper medical treatment for basal cell carcinoma, a hernia, cataract surgery, and various other medical conditions.  *See generally* Compl., ECF No. 1; Am. Compl., ECF No. 13.   Plaintiff first noticed a bleeding mole on his left ear on December 23, 2010 while housed at Calhoun State Prison ("CSP").   Compl. 6, ¶ 1. Because Plaintiff had previously had bleeding moles that were diagnosed as basal cell carcinoma, he immediately requested to be seen, orally and in writing, by the medical staff.  Compl. 6, ¶¶ 2-3.  On December 27, 2010, Plaintiff was seen by Dr. Ayers, who despite seeing the bleeding mole, refused to examine Plaintiff and instead told Plaintiff to submit a sick call.  Compl. 6, ¶ 4.  That same day, Plaintiff filed an informal grievance (Grievance #73463) regarding a medical issue.[1]  Cross Aff. Ex. 1, ECF No. 16-8.  That informal grievance was never resolved.  Cross Aff. Ex. 1 (listing grievance #73463 as "NOT RESOLVED").  He also immediately submitted another sick call request after speaking with Dr. Ayers and submitted numerous others in the following months. Compl. 6, ¶ 5.  Dr. Ayers did not examine the bleeding mole.  *Id.*

During this time, the mole continuously bled and caused pain and hearing complications for Plaintiff.  Compl. 6, ¶ 7.  Finally, in April 2011, Dr. McClarin—a dermatologist at Ware State Prison ("Ware")—examined Plaintiff's ear via telemed. Compl. 6, ¶ 6.  Dr. McClarin diagnosed the bleeding mole as basal cell carcinoma and requested that the CSP staff send Plaintiff to Ware for treatment.  Compl. 6, ¶ 8.  Neither Dr. McClarin nor Dr. Ayers ordered a biopsy of the mole.  Compl. 6, ¶ 9.  Instead, Plaintiff was transported to Ware "approximately 12-13 [times] . . . to have the bleeding

---

[1] Grievance #73463 is not in the record.

mole frozen" pursuant to orders entered by both Dr. Ayers and Dr. McClarin.[2]  Compl. 6, ¶ 10.  Plaintiff contends that the mole should have been surgically removed, but Drs. Ayers and McClarin utilized the freezing procedure (also referred to as cryosurgery) instead "with the intent to cause plaintiff harm for exercising his rights [by filing grievances] and save money."  Compl. 7, ¶ 12; Compl. 9, ¶ 35.  Plaintiff claims that these sessions did not remove the cancerous cells.

In February 2013—twenty-six months after Dr. Ayers became aware of the bleeding mole and twenty-two months after Dr. McClarin diagnosed the bleeding mole as cancerous—Plaintiff was transported to Augusta State Medical Prison ("ASMP") because the ear condition "was worsening."[3]  Compl. 8, ¶ 24.  As a result of "the delay in diagnosing the cancer and the wrong procedure being performed," Plaintiff alleges that his ear was detached in April 2013 and was reattached in December 2013 by Dr. Ritter at ASMP.  Compl. 7, ¶ 12; Compl. 8, ¶¶ 25-26.  Plaintiff contends that the delays in biopsying and removing the cancerous mole were done not only with deliberate indifference but were done in retaliation for Plaintiff's filing of grievances and complaints about the inadequate medical care he was receiving.  *See* Compl. 7, ¶¶ 15, 16; Compl. 8, ¶ 28; Compl. 9, ¶¶ 35, 38.  Plaintiff also specifically avers that after the surgery detaching his left ear, Dr. Ayers "angrily informed plaintiff that he was denying the

---

[2] Defendant McClarin notes that due to discovery being stayed, he has been unable to obtain and review the relevant medical records and so the exact dates and results of these sessions are currently unknown.  Br. in Supp. of McClarin's Mot. to Dismiss 2, ECF No. 23-1.

[3] Plaintiff alleges that at some point prior to February 2013 three different nurses at CSP—Odum, McDaniel, and Lefee—observed the worsening of the condition and "told plaintiff he needed to do something about his ear."  Compl. 7, ¶ 20.

reconstructive surgery for the plaintiff's ear," despite the fact that Dr. Ritter had already received approval for the surgery.  Compl. 8, ¶ 28.

Plaintiff also suffers from a number of other conditions, including irritable bowel syndrome and a hernia.  Compl. 7, ¶¶ 13-14.  Plaintiff contends that Dr. Ayers was well aware of these conditions and had previously prescribed lactulose and Colace "to prevent plaintiff from having to strain to have a bowel movement in order to prevent the hernia from worsening."  Compl. 7, ¶ 21; Compl. 8, ¶ 22.  Plaintiff repeatedly requested surgery for the hernia, but Dr. Ayers refused to approve it because of "his anger over the grievances [Plaintiff filed] against him."  Compl. 7, ¶¶ 14, 16.  In fact, Plaintiff contends that at one point, Dr. Ayers "stopped all of plaintiff's medications."  Specifically, Plaintiff avers that, in response to the filing of grievances and complaints against him, Dr. Ayers told the medical staff not to give Plaintiff anything, including the lactulose and Colace, which had previously been prescribed by Dr. Ayers to Plaintiff for about two years. Compl. 7, ¶¶ 17-19, 21.

Plaintiff filed two grievances in relation to issues with Dr. Ayers refusing to provide medication.  *See* Cross Aff. Ex. 2, ECF No. 16-9; Cross Aff. Ex. 3, ECF No. 16-10.  Plaintiff filed an informal grievance (Grievance #123768) on June 25, 2012, complaining that Dr. Ayers had "stopped the bowel regulator (lactulose)."  Cross Aff. Ex. 2 at 1-2.  Plaintiff's subsequently filed a formal grievance, alleging that "Dr. Ayers 'stopped' the bowel regulator lactulose, by not signing a new order request" and that this failure exemplified Dr. Ayers' "propensity for retaliatory, 'cruel and unusual punishment.'"  Cross Aff. Ex. 2 at 3, 6.  This grievance was denied on August 10, 2012,

4

because the warden determined that the "issue has already been resolved."   Cross Aff. Ex. 2 at 3, 6.   Plaintiff then filed a grievance appeal, which was denied on October 20, 2012.  Cross Aff. Ex. 2 at 4-5.

On September 12, 2012, Plaintiff submitted an informal grievance (Grievance #131740) alleging that Dr. Ayers stopped prescribing Colace, which was detrimental to his health.  Cross Aff. Ex. 3 at 3, 5.  Upon investigation, a Health Services Administrator stated that Plaintiff's order for Colace expired on August 14, 2012 and that Plaintiff when was seen by Dr. Ayers thirteen days after he submitted the grievance, Dr. Ayers informed Plaintiff "that he was not going to make any medication changes."  Cross Aff. Ex. 3 at 5. The administrator went on to state that Plaintiff "already has lactulose available to take PRN for his bowel problems."  *Id.*  Plaintiff then submitted a formal grievance on October 1, 2012.  Cross Aff. Ex. 3 at 1.  That grievance was denied on October 24, 2012, because the warden found that after speaking with Dr. Ayers, no medical changes had been made.  *Id.*  Plaintiff submitted a grievance appeal on October 26, 2012, alleging that Dr. Ayers was well aware that stopping the use of Colace would be harmful and that without the Colace, he has had to strain to have bowel movements and is concerned that this may cause a hernia to burst.  Cross Aff. Ex. 3 at 7.  Plaintiff's grievance appeal was denied on January 31, 2013.  Cross Aff. Ex. 3 at 8.  Without these medications, Plaintiff's hernia worsened.  Compl. 8, ¶ 23.

In June 2013, Plaintiff was transferred to Washington State Prison ("WSP"). Compl. 8, ¶ 27.  He was seen by Dr. Rogers shortly after arriving at WSP.  Compl. 8, ¶ 29.   During this examination, Dr. Rogers and Plaintiff discussed Plaintiff's ear

detachment surgery, hernia, and a new bleeding mole located on Plaintiff's nose.  Compl. 8, ¶ 29.  Despite this information, the bleeding mole on Plaintiff's nose was not biopsied until ten months later, on April 14, 2014, by a doctor at ASMP.  Compl. 8, ¶ 30.  Over the course of Plaintiff's incarceration at WSP, Plaintiff repeatedly asked Dr. Rogers to provide surgery for the hernia and the bleeding mole on his nose.  Compl. 8, ¶ 31.  It was not until October 2014—about fifty months since Dr. Ayers knew of the hernia and sixteen months since Dr. Rogers was informed—that Plaintiff received hernia surgery while at ASMP.[4]  Compl. 8, ¶ 27.

Plaintiff also alleges that at some point after his transfer to WSP, he filed a grievance with Defendant Glenn Fleming, Deputy Warden of Care and Treatment at WSP, regarding the "continuous denial of adequate treatment and recurring problems regarding his ear" and then engaged in a discussion about these problems with Defendant Fleming.  Compl. 9, ¶ 36.  Plaintiff contends that despite this discussion and Defendant Fleming's awareness of his serious medical issues, Defendant Fleming failed to have treatment provided and "denied [the] grievance, on frivolous grounds."  *Id.*  Plaintiff submitted a grievance (Grievance #177129) on June 26, 2014, alleging that he was experiencing pain, bleeding, abscesses, and hearing deficiencies in his left ear and that he was "denied diagnosis/treatment on numerous occasions despite numerous requests, complaints, etc."  Fleming Aff. ¶ 15, ECF No. 43-2; Fleming Aff. Ex. 3 at 6-7, ECF No. 43-2.  Plaintiff then briefly recited the same allegations discussed above, explaining that

---

[4] It is unclear whether Plaintiff has received surgery or any treatment for the bleeding mole on his nose since the biopsy in April 2014.

the issues with his ear went back to 2010; that Drs. Rogers, Ayers, and McClarin were responsible for the delay in treatment; that he experienced other issues such as the stopping medications and other acts of retaliation; and requested that he be provided adequate medical care, that the retaliation and "cruel and unusual punishment" cease, and sought damages. *Id.* The grievance was denied on August 2, 2014, because the warden found that Plaintiff was seen by medical on May 14, 2014 and May 21, 2014 "for your medical conditions which resolved your request of sick call." Fleming Aff. Ex. 3 at 1. The warden also "encouraged [Plaintiff] to report to sick call as needed." *Id.* Defendant Fleming contends that Plaintiff did not submit a grievance appeal following the warden's denial. Fleming Aff. ¶ 16. Plaintiff asserts that he has submitted a number of grievance appeals—and specifically references Grievance # 177129—but that they were denied or Plaintiff received no response. *See* Pl.'s Resp. to Rogers' & Ayers' Mot. to Dismiss ¶ 5, ECF No. 28; Pl.'s Resp. to McClarin's Mot. to Dismiss ¶ 6, ECF No. 33; *see also* Compl. 7, ¶ 15. Plaintiff further avers that Defendant Fleming "is disposing of grievance appeals instead of processing them." Pl.'s Resp. to Rogers' & Ayers' Mot. to Dismiss ¶ 6.

     On December 14, 2014, Plaintiff filed his Complaint.[5] Am. Compl. ¶ 1, ECF No. 13. Plaintiff contends that Defendants Ayers, McClarin, Rogers, and Fleming's actions

---

[5] Defendants contend that because Plaintiff dated his Complaint December 10, 2014, that is the date of filing under the mailbox rule. Br. in Supp. of Rogers' & Ayers' Mot. to Dismiss 5, ECF No. 16-1. Plaintiff contends that although he signed the complaint on December 10, it was not "sent to the court" until December 14, 2014. Am. Compl. ¶ 1. "Under the mailbox rule . . . a prisoner's pleading is considered filed on the date the prisoner delivers such to prison authorities for filing." *Day v. Hall*, 528 F.3d 1315, 1318 (11th Cir. 2008); *see also McGee v. Warden, FDC Miami*, 487 F. App'x 516, 517 (11th Cir. 2012) (per curiam). Thus, at the motion to dismiss stage, the Court will use the December 14, 2014 date as the relevant filing date.

constitute the following claims for relief under § 1983: (1) Eighth Amendment violations by Defendants Ayers and McClarin for the delay in diagnosing the bleeding mole and for attempting to freeze the mole in an effort to save money rather than conducting the proper procedure of surgically removing it; (2) Eighth Amendment violations by Defendant Ayers for discontinuing the Colace and lactulose and thereby exacerbating his hernia condition and for refusing to perform the hernia surgery; (3) First Amendment retaliation violations by Defendant Ayers for discontinuing the medication and refusing to allow the ear reconstructive surgery; (4) Eighth Amendment violations by Defendant Rogers for delaying the diagnosis and treatment of the bleeding mole on his nose and delaying the surgery for his hernia; and (5) Eighth Amendment violation by Defendant Fleming for failing to take any action despite knowing that Defendant Rogers was refusing to provide Plaintiff with medical treatment for the two serious medical conditions of basal cell carcinoma and hernia.

On March 4, 2015, Plaintiff filed an amended complaint, bringing forth additional claims against Defendant Rogers and against two new parties, Sergeant Bobby Harrison and Warden Donald Barrow.  (ECF No.  13.)  Plaintiff claims that on December 23, 2014, about a week after filing his complaint, Defendant Harrison made a racially charged statement about Plaintiff in front of "60-90" other inmates which "caused racial unrest in the cafeteria and the dormitory and subjected plaintiff to harassment and the possibility of harm."[6]  Am. Compl. ¶¶ 4-7, ECF No. 13.  Plaintiff further avers that he

---

[6] Plaintiff alleges that Defendant Harrison yelled at Plaintiff, "You old white m-----f----r still living in the slavery days think you don't have to listen to a black man."  Am. Compl. ¶ 4.

"prepared a statement regarding the incident . . . and served it on Warden Donald Barrow, Internal Affairs, the Southern Center for Human Rights, this Court, and Mrs. Angie Holt."  Am. Compl. ¶ 9.  Plaintiff did not, however, file a grievance relating to the incident, due to his fear of further reprisals.  Pl.'s Resp. to Fleming, Harrison, & Barrow's Mot. to Dismiss ¶ 18, ECF No. 51.  On January 14, 2015, while Plaintiff and "approximate[ly] 95 other prisoners in E-1 dormitory" were in the cafeteria, Defendant Harrison yelled out, "Y'all got a snitch—you watch the next one to talk, he a snitch—he go to medical, then he walk through to the Warden, he snitch—he in y'all dorm—y'all need to get him out—y'all need to watch him—he going to snitch on you—y'all know snitches need to get stiches."  Am. Compl. ¶ 10.  And again the next day, Defendant Harrison made similar statements about the existence of a snitch in the E-1 dormitory, causing "racial unrest, humiliation, threats, etc., and placed [Plaintiff] in position to be assaulted."  Am. Compl. ¶¶ 12-13.

Plaintiff also alleges that prior to the filing of the complaint, he had permission from both Defendant Rogers and Defendant Barrow to have "an over-the-counter medication (Herblax) sent in," had been "prescribed a bran fiber H.S. snack" by Defendant Rogers, and was prescribed Colace and lactulose.  Am. Compl. ¶¶ 15, 18, 20. After the complaint was filed, Defendants Rogers and Barrow denied him access to the Herblax, bran fiber snack, Colace, and lactulose.  Am. Compl. ¶¶ 17, 19, 21. Additionally, at some point before Plaintiff began this action, he was diagnosed with "plaque cataracts" by optometrists and informed that this condition "would result in blindness by approximately March 2015 without needed surgery."  Am. Compl. ¶ 23.

The optometrist made Defendant Rogers aware of Plaintiff's condition and Defendant Rogers then told Plaintiff that he was submitting documentation to approve the surgery. Am. Compl. ¶ 24.  However, since the filing of the complaint, the cataract surgery has been delayed "to the point plaintiff is nearly blind."  Am. Compl. ¶ 25.  Plaintiff avers that although he has "notified" Defendant Barrow of these actions, "Barrow has refused to take action."  Am. Compl. ¶ 26.  In his Amended Complaint, Plaintiff contends that Defendants Rogers, Barrow, and Harrison's actions constitute the following claims for relief under § 1983: (1) First Amendment violations by Defendant Harrison for labeling Plaintiff as a "snitch" after Plaintiff filed statements about Harrison's prior racially-charged statements; (2) Eighth Amendment violations by Defendant Rogers for denying access to the Herblax, bran fiber snack, and medication and for delaying the cataract surgery; (3) First Amendment retaliation violations by Defendant Rogers for discontinuing the Herblax, bran fiber snack, and medication and for delaying the cataract surgery; and (4) Eighth Amendment violation by Defendant Barrow for failing to take any action despite knowing that Defendant Rogers was refusing to provide Plaintiff with medical treatment.

After preliminary review, the undersigned recommended that only the claims against Defendants Ayers, McClarin, and Rogers alleged in the complaint be allowed to proceed.  R. & R. 2-4, Feb. 4, 2015, ECF No. 8.  The district judge adopted the Recommendation in part, but also permitted the following claims to proceed: the Eighth Amendment claim against Fleming; the retaliation claim against Harrison; the Eighth Amendment claim relating to the delayed cataract surgery against Barrow; and the

supplemental Eighth and First Amendment claims against Defendant Rogers. Order 2-3, 4-6, 9, April 13, 2015, ECF No. 19. Defendants move to dismiss the complaint, contending that Plaintiff did not exhaust administrative remedies prior to filing; that he fails to state a claim; that they are entitled to qualified immunity; and that the claims against Drs. Ayers and McClarin are barred by the statute of limitations. (ECF Nos. 16, 23, 43.) Plaintiff opposes each of the motions and moves for a preliminary injunction (ECF No. 38). Plaintiff also filed motions requesting the Court take judicial notice of the fact that Plaintiff's "jailhouse lawyer" was transferred to another facility and that Plaintiff has not received certain filings because Defendants tampered with his legal mail. (ECF Nos. 48 & 50.) These motions are ripe for review.

## DISCUSSION

Defendants filed three motions to dismiss Plaintiff's Complaint (ECF Nos. 16, 23, 43). Defendants Ayers and Rogers move to dismiss, contending that Plaintiff's complaint is due to be dismissed because: (1) Plaintiff's claims against Defendant Ayers are time-barred; (2) Plaintiff failed to exhaust administrative remedies; (3) Plaintiff fails to state a cognizable claim; and, alternatively, (4) Defendants are entitled to qualified immunity. (ECF No. 16.) Defendant McClarin likewise moves to dismiss, adopting the arguments asserted in Defendants Ayers' and Rogers' motion to dismiss and reasserting that the statute of limitations bars Plaintiff's claims against him and that Plaintiff failed to exhaust. (ECF No. 23.) And finally, Defendants Fleming, Harrison, and Barrow move to dismiss for failure to exhaust, failure to state a claim, and alternatively, qualified immunity. (ECF No. 43.) For the reasons explained below, it is recommended that the

first motion be denied in part and granted in part, the second motion be denied, and that Defendants' third motion be granted in part and denied in part.

**I.      Motions to Dismiss**

      A.      <u>Statute of Limitations</u>

      Defendants Ayers and McClarin contend that Plaintiff's claims regarding Dr. Ayers' delay in diagnosing the bleeding mole on Plaintiff's ear, Defendants Ayers and McClarin's inadequate treatment of the bleeding mole, and Defendant Ayers' delay in treating the hernia are time-barred, as these claims accrued prior to December 14, 2012. *See* Br. in Supp. of Rogers' & Ayers' Mot. to Dismiss 4-5, ECF No. 16-1; Br. in Supp. of McClarin's Mot. to Dismiss 1-3, ECF No. 23-1.  It is well settled that the forum state's limitation period applicable to personal injury actions is applied to an action brought pursuant to § 1983.  *Wallace v. Kato*, 549 U.S. 384, 386 (2007).  The Georgia statute of limitations for personal injury is two years.  O.C.G.A. § 9-3-33; *see also Bell v. Metro. Atlanta Rapid Transit Auth.*, 521 F. App'x 862, 865 (11th Cir. 2013) ("The forum state's statute of limitations for personal injury actions applies to § 1983 claims, which in Georgia is two years.").  A statute of limitations begins to run when a cause of action accrues—in other words, when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (internal quotation marks and citation omitted).  Defendants argue that with regard to Defendant Ayers, the claims accrued when he first refused to treat the bleeding mole on December 27, 2010 and continued to refuse to treat until the April 2011 telemed conference, and as to Defendant

McClarin, the claim accrued during Plaintiff's initial April 2011 visit.  *See* Br. in Supp. of Rogers' & Ayers' Mot. to Dismiss 4-5; Br. in Supp. of McClarin's Mot. to Dismiss 2. Here, the complaint was not filed until December 14, 2014, thus Defendants Ayers and McClarin contend that their alleged acts underlying Plaintiff's § 1983 claims are time-barred.  Br. in Supp. of Rogers' & Ayers' Mot. to Dismiss 4-5; Br. in Supp. of McClarin's Mot. to Dismiss 2.

Although generally speaking "accrual occurs when the prisoner knows or should know that he has suffered the injury that forms the basis of his complaint . . . an allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided." *Baker v. Sanford*, 484 F. App'x 291, 293 (11th Cir. 2012) (internal citations and quotations omitted).  "The critical distinction in the continuing violation analysis is whether the prisoner complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does."  *Id.* (internal quotations omitted).  Plaintiff alleges that Defendants first delayed in diagnosing the cancerous mole and then provided inadequate medical treatment over the course of two years, which together, necessitated the removal and reattachment of Plaintiff's left ear in April 2013 and December 2013, respectively. Compl. 8, ¶¶  25-26, ECF No. 1.  Plaintiff thus argues that these actions constitute a continuing violation which did not accrue until December 2013, when the correct treatment was finally provided.

The record before the Court is silent as to the dates of these treatments, what the

treatments entailed, and the effect of these treatments on Plaintiff's condition.  Without this information, the Court cannot adequately determine whether Defendants' delay in treatment and/or improper treatment constitute a continuing violation or are time-barred (as at least some of these cryosurgeries may have taken place after December 14, 2012 but before Plaintiff was transferred to ASMP in February 2013).   If after further discovery it becomes apparent that these actions—together or separately—do not constitute continuing violations and took place prior to December 14, 2012, Defendants may renew this argument.  However, under the record currently before the Court, it is recommended that Defendant Ayers and McClarin's motions to dismiss be denied.[7]

---

[7]  Neither party presents arguments relating to whether the statute of limitations bars the retaliation claim against Defendant Ayers for the discontinuation of the medications.  The grievance (Grievance #131740) complaining about the discontinuation of the Colace was not denied until April 3, 2013, well within the statute of limitations period.  Cross Aff. Ex. 1.  Although the Eleventh Circuit in *Leal v. Georgia Department of Corrections*, 254 F.3d 1276, 1280 (11th Cir. 2001) "decline[d] to decide . . . the legal issue of whether the mandatory exhaustion requirement of 42 U.S.C. § 1997e(a) and the actual exhaustion  of remedies by a prisoner will operate to toll the statute of limitations," several circuit courts have held that tolling should apply.  *See*, *e.g.*, *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) ("the statute of limitations which applied to [the prisoner's] civil rights action was tolled for the period during which his available state remedies were being exhausted."); *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (tolling of the statute of limitations is appropriate while the inmate completes the mandatory exhaustion requirements); *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001) (holding that under Illinois' statute of limitations, the limitations period is tolled while the inmate completes the administrative grievance process); *Nickolich v. Rowe*, 299 F. App'x 725, 725-26 (9th Cir. 2008) (holding that a state prisoner's § 1983 deliberate indifference claim was not time barred under California's two-year statute of limitations where the inmate timely commenced the grievance process and filed the complaint within two years of completing the mandatory grievance process); *Baldwin v. Benjamin*, No. 5:09-CV-372 (CAR), 2010 WL 1654937, at *1 (M.D. Ga. Apr. 23, 2010) ("Since the plain language of the Prison Litigation Reform Act, 28 U.S.C. § 1915e(a), makes exhaustion a precondition to filing this type of civil rights action in federal court, Plaintiff's filing of a grievance may have operated to toll the statute of limitations in this case.").  Therefore, to the extent Defendant Ayers seeks dismissal of this retaliation claim against him, it is recommended that the motion to dismiss be denied.

B.    Failure to Exhaust

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted).  The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss.  *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]").  Furthermore, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.*  If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed.  *Id.*  "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.*  The defendant

bears the burden of proof during this second step.  *Id.*

As exhibits to their motions to dismiss, Defendants submit affidavits from the Deputy Wardens of Care and Treatment at both CSP and WSP, who oversee the grievance procedure by processing and maintaining all relevant records and updating the online grievance database.  Fleming Aff. ¶ 4, ECF No. 43-2; Cross Aff. ¶ 4, ECF No. 16-7.  Defendants contend that of the fifteen grievances Plaintiff has filed over the course of his incarceration, he has only fully exhausted three grievances: one while incarcerated at Lee State Prison and two while incarcerated at CSP (Grievance Nos. 123768, 131740).  Br. in Supp. of Rogers' & Ayers' Mot. to Dismiss 7-10.  Based on these affidavits and accompanying exhibits, Defendants argue that Plaintiff failed to exhaust, and his complaint should therefore be dismissed.

Plaintiff, however, insists that he fully exhausted his administrative remedies.  *See*, *e.g.*, Pl.'s Resp. to Rogers' & Ayers' Mot. to Dismiss ¶ 5; Pl.'s Resp. to McClarin's Mot. to Dismiss ¶  6.  Plaintiff repeatedly avers that he filed grievances "regarding his complaints" while at both CSP and WSP, and further that he submitted grievance appeals once those grievances were denied but that those appeals "were in fact denied or not responded to."  Pl.'s Resp. to Rogers' & Ayers' Mot. to Dismiss ¶ 5.  Plaintiff also specifically lists a number of grievances that he appealed and allegedly has grievance appeal receipts for—including grievance #177129, which provides an overview of all the issues Plaintiff encountered from 2010 through 2014—and states that Defendant Fleming has a practice of "disposing of grievance appeals instead of processing them."  Pl.'s Resp. to Rogers' & Ayers' Mot. to Dismiss ¶¶ 5-6.  Plaintiff contends that although he has been

filing grievance appeals, "the appeals never get responded to; and evidently, never reach their proper destination" and this could be a contributing factor as to why Defendants' grievance database is inaccurate.  Pl.'s Resp. to Rogers' & Ayers' Mot. to Dismiss ¶ 6.

Moreover, Plaintiff objects to Defendants' practice of attaching exhibits and extraneous evidence to their motions to dismiss, arguing that a motion to dismiss should only be decided based on the pleadings.[8]  *See*, *e.g.*, Pl.'s Resp. to Rogers' & Ayers' Mot. to Dismiss ¶ 9; s*ee also Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) ("Rule 12(b) provides that a motion to dismiss for failure to state a claim will be automatically converted into a motion for summary judgment (Rule 56) if the court considers matters outside the pleadings.").[9]  While Plaintiff is correct that motions to dismiss are typically decided based solely on the allegations in the pleadings, "exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits."  *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).  "[I]t is [thus] proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  *Id.*  However, the Eleventh Circuit in *Bryant* cautioned that "[i]f the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust—a procedure closely analogous to summary judgment—then the court must assure that [the

---

[8] Because of this belief, Plaintiff withheld the documentation supporting his allegations that he filed grievance appeals and intimates that he will produce the evidence at the appropriate stage of the proceedings or at the Court's direction.  Pl.'s Resp. to McClarin's Mot. to Dismiss ¶  7.

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit that were rendered prior to October 1, 1981.

plaintiff] has fair notice of his opportunity to develop a record." *Bryant*, 530 F.3d at 1377 n.14 (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003)) (second alteration in original).

At the first step of the exhaustion analysis, it is clear Plaintiff failed to his exhaust administrative remedies regarding his First Amendment claim against Defendant Harrison. Plaintiff does not contradict Defendants' version of the facts and admits that he never filed a grievance or grievance appeal. Plaintiff contends instead that the administrative remedies were not truly "available" within the meaning of § 1997e(a). Pl.'s Resp. to Fleming, Harrison, & Barrow's Mot. to Dismiss ¶ 18, ECF No. 51. Specifically, Plaintiff avers that he did not pursue the grievance process for fear of reprisals because of the retaliatory nature of Defendant Harrison's statements to the other inmates that there was a snitch in their midst, which were made three weeks after Plaintiff submitted letters to Defendant Barrow and the Court complaining of Defendant Harrison's previous racially charged statement. *Id.*

An administrative remedy is "unavailable," which thereby obviates the exhaustion requirement, if:

> (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008). Plaintiff fails to establish that Defendant Harrison proclaiming the presence of a snitch "would deter a reasonable inmate of ordinary firmness and fortitude" from filing a grievance. He simply asserts that

Defendant Harrison's statements made in front of several inmates that someone (without labeling Plaintiff as that someone) was a snitch, placed his life in jeopardy and that the "ongoing threats of substantial retaliation in having plaintiff assaulted or killed made it irrational for him to further pursue the grievance process." Pl.'s Resp. to Fleming, Harrison, & Barrow's Mot. to Dismiss ¶ 18. This argument is unpersuasive and it is recommended that the motion to dismiss be granted for the claims against Defendant Harrison

Similarly, Plaintiff's supplemental claims against Defendant Rogers concerning the delay of the cataract surgery should be dismissed for lack of exhaustion at the first step of the *Turner* analysis. Defendant Rogers contends that Plaintiff did not and could not have fully exhausted these claims because Defendant Rogers allegedly decided to delay the surgery after the filing of the Complaint on December 14, 2014, but before Plaintiff filed the Amended Complaint on March 4, 2015. Rogers' Suppl. Br. in Supp. of Mot. to Dismiss 3-4, ECF No. 25. Pursuant to the Department of Corrections' grievance procedure, an inmate must file the original grievance within ten days from the date the inmate becomes aware of the facts giving rise to the grievance. Fleming Aff. Ex. 1 at 8, ECF No. 16-3.[10] Thereafter, the warden has 40 days from the date of submission to deliver a decision to the inmate and if the inmate disagrees with the warden's decision, he has seven days to submit an appeal. Fleming Aff. Ex. 1 at 10. Once the inmate submits an appeal, the Central Office then has 100 days to deliver a decision to the inmate.

---

[10] Exhibit 1 to Defendant Fleming's Affidavit is the Georgia Department of Corrections Standard Operating Procedure.

Fleming Aff. Ex. 1 at 13. Defendants thus conclude that because Plaintiff filed his Amended Complaint roughly 80 days after he filed the Complaint, Plaintiff did not "allow prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." Rogers' Suppl. Br. in Supp. of Mot. to Dismiss 4 (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)). Plaintiff does not address these arguments or contradict Defendant Rogers' version of the facts. It is therefore recommended that Defendant Rogers' motion to dismiss concerning the claims involving the cataract surgery be granted.

Plaintiff's First and Eighth Amendment claims regarding the denial of medications by Defendant Ayers are fully exhausted, as both Defendants' and Plaintiff's factual allegations do not conflict. On June 25, 2012 and September 12, 2012, Plaintiff filed grievance # 123768 and grievance # 131740 respectively, alleging that Defendant Ayers wrongfully discontinued the use of lactulose and Colace. Cross Aff. Ex. 2 at 1-2, ECF No. 16-9; Cross Aff. Ex. 3 at 3, 5, ECF No. 16-10. Although Defendants contend that these grievances do not relate to claims at issue in this lawsuit, Defendants are mistaken. Br. in Supp. of Rogers' & Ayers' Mot. to Dismiss 10. Plaintiff alleges that Defendant Ayers discontinued these medications in retaliation for the grievances that Plaintiff filed about the inadequate treatment of the bleeding mole and that this discontinuation worsened Plaintiff's hernia. Compl. 7, ¶¶ 17-19, 21; Compl. 8, ¶ 23. This grievance thus directly relates to Plaintiff's First and Eighth Amendment claims against Defendant Ayers for the treatment of Plaintiff's hernia. At the first step of the *Turner* analysis, it is clear that Plaintiff did fully exhaust his administrative remedies, and it is therefore

recommended that Defendant Ayers' motion to dismiss regarding these claims be denied.

Defendants do not present sufficient evidence to establish that Plaintiff failed to exhaust as to Plaintiff's remaining claims against Defendants Ayers, McClarin, Rogers, Fleming, and Barrow.  At the first step of the exhaustion analysis, the Court looks to the Defendants' contentions and Plaintiff's responses to see if they factually conflict. Plaintiff avers that he not only fully exhausted his grievances but also that Defendant Fleming has a practice of disposing of grievance appeals rather than processing them. This directly conflicts with Defendants' contentions that Plaintiff failed to exhaust all grievances related to the underlying claims of the instant action.[11]   Thus, taking Plaintiff's contentions as true, the complaint is not subject to dismissal at the first stage of the *Turner* analysis.

At the second step of the exhaustion analysis, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082-83.  Defendants Ayers, McClarin, and Rogers have failed to carry their burden of proof at the second stage of the *Turner* analysis regarding Plaintiff's claims involving the inadequate treatment of the bleeding mole on Plaintiff's ear, the delay in surgically correcting Plaintiff's hernia, and the ten month delay in biopsying the bleeding mole on Plaintiff's nose.[12]   Defendants vehemently contend that this Court

---

[11] Defendants have not contradicted or even addressed Plaintiff's allegation that Defendant Fleming has a practice of disposing of grievances.  *See* Br. in Supp. of Fleming, Harrison, and Barrow's Mot. to Dismiss 7-8; Fleming, Harrison, & Barrow's Reply Resp. 2-3, ECF No. 52.

[12] Although not addressed by either party, if Plaintiff's unresolved, informal grievance filed on December 27, 2010 (Grievance #73463) specifically grieved Defendant Ayers' delay in diagnosing or treating the bleeding mole on his ear, then Plaintiff did fully exhaust with regard to

should rely on Cross's and Fleming's affidavits supporting their argument that Plaintiff

failed to exhaust rather than Plaintiff's statements simply because Plaintiff's averments as

to the existence of contradictory evidence are unsubstantiated and conclusory.  Br. in

Supp. of Fleming, Harrison, and Barrow's Mot. to Dismiss 7-8; Fleming, Harrison, &

Barrow's Reply Resp. 2-3.  However, it is clear that Plaintiff did not have fair notice of

his ability to develop a record and Defendants themselves offer nothing aside from

conclusory statements that such evidence does not exist.  Defendants also entirely ignore

Plaintiff's allegation that Defendant Fleming disposed of his grievance appeals without

processing them.   The Court therefore declines to discount Plaintiff's statements

regarding the existence of contradictory evidence and the (unchallenged) allegations that

Defendant Fleming disposes of grievance appeals.  *See*, *e.g.*, *Jackson v. Georgia*, 623 F.

App'x 949, 953-955 (11th Cir. June 29, 2015) (discussing the impropriety of relying on

the defendants affidavits and discounting of the plaintiff's statements that the prison's

grievance database was inaccurate and further alleging the existence of documentation

supporting the contention that he did properly exhaust and offering to provide such

documentation to the Court).  While after further factual development it may become

apparent that Plaintiff did not exhaust administrative remedies as to all or part of his

claims, at this stage Defendants fail to establish this contention and it is thus

recommended that Defendants' motions to dismiss regarding the aforementioned claims

---

that claim against Defendant Ayers.  *See*, *e.g.*, *Jackson v. Georgia*, 623 F. App'x 949, 953 (11th
Cir. June 29, 2015) ("Jackson should be excused for his failure to pursue further administrative
remedies because the lack of response to his informal grievance did not comply with the inmate
grievance procedure").

be denied.

Regarding Plaintiff's Eighth Amendment claims for failure to act against Defendants Fleming and Barrow, Defendants likewise fail to establish that Plaintiff did not exhaust his administrative remedies. Plaintiff again avers that he did file grievances against Defendants Barrow and Fleming, but that those grievances were denied. Pl.'s Resp. to Fleming, Harrison, & Barrow's Mot. to Dismiss ¶ 17. Defendants note that unlike in his previous responses, Plaintiff does not proffer grievance receipts for grievances filed against Defendants Barrow and Fleming. Fleming, Harrison, & Barrow's Reply Resp. 2, ECF No. 52; *see also* Pl.'s Resp. to Fleming, Harrison, & Barrow's Mot. to Dismiss ¶ 17. However, drawing all inferences in Plaintiff's favor, Defendants Fleming and Barrow have not presented sufficient evidence to discount Plaintiff's allegations that Defendant Fleming interferes with the proper processing of grievance appeals. It is therefore recommended that Defendants' motions to dismiss concerning these claims be denied.

And finally, Defendant Rogers contends that Plaintiff did not and could not have fully exhausted the claims involving the discontinuation of the fiber snack, lactulose and Colace, and Herblax because Plaintiff filed the Amended Complaint only 80 days after these acts could have taken place, which did not provide sufficient time for the grievance process to have been completed. Rogers' Suppl. Br. in Supp. of Mot. to Dismiss 3-4, ECF No. 25. However, to the extent that Plaintiff contends that the discontinuation of the medications and snack profile constitute a *continuation* of Plaintiff's previous allegations of inadequate medical care of the hernia, these claims should not be

dismissed.  "The [PLRA] statute merely requires inmates to complete the administrative review process in compliance with the prison's grievance procedures, so that there is time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (internal citations and quotations omitted).  "[A plaintiff is] not required to initiate another round of the administrative grievance process on the exact same issue each time another request for [medical care is] denied."  *Id.*  This is especially evident where "[n]othing in the [GDOC's] grievance procedures requires inmates to file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance."[13]  *Id.*  Here, Plaintiff's supplemental allegations against Defendant Rogers are continuations of the previously asserted complaints of inadequate medical care and as discussed above, Defendants fail to carry their burden establishing Plaintiff's lack of exhaustion as to such claims.  It is therefore recommended that Defendants' motions to dismiss concerning these claims be denied.

 C.    Failure to State a Claim

Defendants argue that Plaintiff fails to state a claim against each Defendant for deliberate indifference and retaliation and that his Complaint should be dismissed pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).  When considering a 12(b)(6)

---

[13] The Eleventh Circuit went on to distinguish such a requirement from the limitation that a grievance must address only one issue.  *Id.*  Although the court in *Parzyck* involved claims against a Florida prison and Florida prison officials, and so analyzed the exhaustion requirements under the Florida Department of Corrections' standard operating procedure, the Georgia Department of Corrections' standard operating procedure similarly limits the scope of a Grievance Form to "a single issue/incident." Fleming Aff. Ex. 1 at VI.D.2., ECF No. 43-2.

motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

### 1.   *Eighth Amendment Claims*

"The Eighth Amendment's prohibition against cruel and unusual punishments protects a prisoner from deliberate indifference to serious medical needs." *Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1094 (11th Cir. 2014) (internal quotation marks and citations omitted). "[T]o prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A serious

25

medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Bingham v. Thomas*, 654 F.3d at 1176 (internal quotation marks and citation omitted). Deliberate indifference requires a showing of a "subjective knowledge of a risk of serious harm" and "disregard of that risk . . . by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted). "In cases that turn on the delay in providing medical care, rather than the type of medical care provided, . . . we have consistently considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

a.      Defendants Ayers and McClarin[14]

Defendants Ayers and McClarin argue that Plaintiff's Complaint fails to state a claim of deliberate indifference in violation of the Eighth Amendment. To survive this motion, Plaintiff's Complaint must contain sufficient factual allegations which, taken as true, establish: (1) that basal cell carcinoma constitutes an objectively serious medical need; (2) that Defendants were deliberately indifferent to that need in that they had (a) subjective knowledge of potential serious harm, (b) they disregarded that risk, and (c) their conduct amounted to more than mere negligence; and (3) that Defendants'

---

[14] As previously discussed, the court cannot determine from the record before it whether all or some of the claims against Defendants Ayers and McClarin constitute a continuing violation. However, for purposes of the motion to dismiss, since these at least some of these claims will only proceed if the underlying actions do constitute a continuing violation, the Court will treat the allegations of delay in diagnosing the bleeding mole and the use of the improper freezing method as part of a continuing violation.

indifference caused Plaintiff's injury.  *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).  It is clear that Plaintiff sufficiently alleges an objectively serious medical need—a bleeding mole, which was ultimately diagnosed as cancerous, on an inmate with a history of skin cancer.  *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment[.]").[15]  Plaintiff must next sufficiently allege that Defendants were deliberately indifferent to that need and that such deliberate indifference caused Plaintiff to suffer some injury.

Plaintiff avers that Defendant Ayers refused to look at Plaintiff's ear from December 2010 until April 2011, despite his numerous oral and written requests and despite the fact that the mole continually bled over this four month period.  Compl. 6, ¶ 7.  While Plaintiff's condition was finally diagnosed as basal cell carcinoma by Defendant McClarin in April 2011, neither doctor ordered a biopsy to confirm the diagnosis or assess the severity of the condition.  Compl. 6, ¶ 10.  Plaintiff was transported to Ware "approximately 12-13 [times] . . . to have the bleeding mole frozen" pursuant to orders entered by both Defendants Ayers and McClarin.  Compl. 6, ¶¶ 9-10.  Plaintiff alleges that the cancer was not successfully removed by the cryosurgical procedures and that Defendants purposefully utilized this less effective method "with knowledge that the said

---

[15] Although Plaintiff's claims regarding the denial of adequate medical treatment for the hernia are mentioned in the motion to dismiss, Defendants only argue that the hernia claims against *Defendant Rogers* are insufficient to state a claim.  Br. in Supp. of Rogers' & Ayres' Mot. to Dismiss 10-14.  Thus, Defendant Ayers does nothing to demonstrate that Plaintiff's allegations against him fail to state a claim for relief.  To the extent Defendant Ayers' motion seeks to dismiss the hernia claims for failure to state a claim, it is thus recommended that the motion to dismiss be denied.

procedure was not the right procedure, with intent to cause plaintiff harm for exercising his rights and save money."  Compl. 9, ¶ 35.  Without the proper treatment, Plaintiff continued to experience bleeding, loss of hearing, and a general worsening of his condition.  Compl. 9, ¶ 33.  Around June or September 2012 (over a year after he was diagnosed with cancer), several nurses noticed the worsening of Plaintiff's ear condition during a "pill call" and told him "he needed to do something about his ear."[16]  Compl. 7, ¶¶ 18-20.  In February 2013, the cancer was still not removed and Plaintiff's condition had worsened to the point that he needed to be transferred to ASMP.  Compl. 8, ¶ 24. Finally, under the care of another doctor, Plaintiff was successfully treated.  Compl. 8, ¶¶ 25-26.  However, because of the delay in diagnosis and the use of an improper treatment method, the doctor had to surgically detach and then reattach Plaintiff's left ear in order to fully remove the cancer.  Compl. 8, ¶¶ 25-26.  Throughout the two year ordeal, Plaintiff pleaded with Defendants to surgically remove the cancerous cells, and when that did not work, filed grievances complaining of the inadequate care.  Compl. 7, ¶ 15; Pl.'s Resp. to McClarin's Mot. to Dismiss 6.

Defendants Ayers and McClarin, however, contend that Plaintiff fails to establish that they were deliberately indifferent to a substantial risk of serious harm when they opted to freeze the mole, rather than excise it.  Br. in Supp. of Rogers' & Ayers' Mot. to Dismiss 12-13.  In support of this proposition, Defendants argue that a physician's choice

---

[16] Although Plaintiff does not give a specific date, he does allege this interaction occurred during the time period in which Defendant Ayers discontinued Plaintiff's prescriptions for lactulose and Colace.  *See* Compl. 7, ¶ 20.  Plaintiff filed grievances related to Defendant Ayers' discontinuation of the medication in June and September 2012.  Cross Aff. Ex. 2 at 1-2; Cross Aff. Ex. 3 at 3, 5.

in treatment is a matter of medical judgment and cannot support an Eighth Amendment deliberate indifference claim. *Id.* (citing *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995)). It is unclear whether Plaintiff alleges that Defendants were deliberately indifferent solely for opting to employ a less effective method and/or that Defendants were deliberately indifferent for choosing a less effective treatment method *because of* a motivation to save money and to retaliate against Plaintiff. Defendants' arguments only address the former claim. However, while "[i]t is . . . true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation[,] . . . grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (internal citations omitted); *see also Harris v. Thigpen*, 941 F.2d 1495, 1509 (11th Cir. 1991) ("[An Eighth Amendment] violation could well be present if the care received by the prisoners, when measured against general professional standards, rose to such a level of gross incompetence that it manifested deliberate indifference.") The Eleventh Circuit has also clarified that "when the need for medical treatment is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference." *Adams*, 61 F.3d at 1544 (citing *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704 (11th Cir. 1985)); *see also McElligott v. Foley*, 182 F.3d 1248, 1257-58 (11th Cir. 1999) ("A jury could conclude that, despite being aware that the medication prescribed . . . was not treating the severe pain he was experiencing, [the prison doctors] did nothing to treat [the inmate's] pain or respond to the deterioration of his condition" and that such actions constituted deliberate indifference). At this stage,

Defendants fail to establish that the choice between attempting to freeze the bleeding mole for the twelfth or thirteenth time rather than opting to excise the cancerous cells was merely a medical judgment call and not an instance of deliberate indifference.

Moreover, Defendants overlook entirely Plaintiff's contention that their choice in treatment method was not merely the product of medical decision making, but rather was a conscious choice of an improper and less effective—but cheaper—course of treatment. Compl. 9, ¶ 35. "[A] doctor's decision to take an easier and less efficacious course of treatment" can constitute deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *see also Adams*, 61 F.3d at 1544. Defendants present no arguments establishing that such an allegation fails to state a claim for relief.[17] Based on this contention and the facts discussed above, at this stage of the proceedings, Plaintiff sufficiently states a claim for relief against Defendants Ayers and McClarin for the claims related to the cancerous mole. It is therefore recommended that Defendants' motions to dismiss regarding these claims be denied.

b.   Defendant Rogers

Defendant Rogers also argues that Plaintiff's Complaint fails to state a claim of deliberate indifference regarding Plaintiff's conditions of basal cell carcinoma and hernia.[18] Again, to survive this motion, Plaintiff's Complaint must contain sufficient

---

[17] Defendants also fail to address Plaintiff's related claim that the they chose to employ the freezing method rather than surgically removing the cancerous cells—knowing it was the wrong treatment—in retaliation for filing grievances.

[18] Defendant Rogers also contends that Plaintiff fails to state a claim of deliberate indifference as to his delay in treating Plaintiff's cataracts. However, as it is recommended that this claim be dismissed for failure to exhaust, the Court declines to address whether this allegation would

factual allegations which, taken as true, establish: (1) that both his basal cell carcinoma and hernia constituted objectively serious medical needs; (2) that Defendant Rogers was deliberately indifferent to those needs in that he had (a) subjective knowledge of serious harm that would result from his failure to take the actions Plaintiff requested, (b) he disregarded that risk, and (c) his conduct amounted to more than mere negligence; and (3) that Defendant Rogers' indifference caused Plaintiff injuries.  The Court considers below whether Plaintiff's Complaint sufficiently alleges these requirements.

As previously explained, Plaintiff sufficiently alleges that he has an objectively serious medical need with regard to the basal cell carcinoma.  Thus, the relevant inquiry here is whether Plaintiff has sufficiently alleged that Defendant Rogers was deliberately indifferent to that need and that such deliberate indifference caused Plaintiff to suffer an injury.  Defendant Rogers asserts that Plaintiff's allegation that "he needed a biopsy of his nose sooner that [sic] he received it" is insufficient to "support a plausible inference that Dr. Rogers was aware of any facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff existed, that Dr. Rogers disregarded that risk and did so by conduct that is more than mere negligence."  Br. in Supp. of Rogers' & Ayers' Mot. to Dismiss 13-14.  However, taking Plaintiff's factual allegations as true, Plaintiff states that when he first arrived at WSP in June 2013, he was examined by Defendant Rogers and the two discussed Plaintiff's medical history, including "his hernia and bleeding mole on his nose . . . [and] his previous surgery for the bleeding mole on his ear."  Compl. 8, ¶ 29.  It was not until April 14, 2014—ten months after Defendant

otherwise be sufficient to state a claim.

Rogers was first made aware of and presumably examined the bleeding mole on Plaintiff's nose—that the mole was biopsied.   Compl. 8, ¶ 30.   Plaintiff alleges that Defendant Rogers was aware of Plaintiff's very recent history of cancer and that Plaintiff was showing similar symptoms of cancer on another location on his face.   Compl. 8, ¶ 29.   Plaintiff also continued to request surgery for the bleeding mole—thus establishing that Defendant Rogers was aware of the ongoing symptoms of cancer.   Compl. 8, ¶ 31. Based on Plaintiff's allegations, Defendant Rogers was subjectively aware of the condition, but disregarded that risk.   *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out.").

Additionally, it is unclear on the face of the pleadings and the motions to dismiss if Plaintiff ever obtained any treatment for the bleeding mole on his nose. Therefore, drawing all inferences in Plaintiff's favor, Defendant Rogers decided to not provide treatment for the bleeding nose mole for the eight months between receiving the diagnosis and the filing of the complaint.   Because of the ten month delay in diagnosing the mole and because of subsequent lack of treatment for the bleeding mole over an eight month period, Plaintiff has "endured months/years of pain and suffering, worsening conditions, . . . bleeding, abscesses, fear of cancer spreading through his head/body, . . . additional injuries, and death."   Compl. 9, ¶ 33.   *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (finding that the simple assertion that the deprivation of medication was "endangering [his] life" was sufficient for pleading purposes to survive a motion to dismiss) (alteration in original).   Plaintiff, therefore, alleges sufficient facts supporting a

claim that Defendant Rogers was deliberately indifferent to Plaintiff's serious medical needs by delaying in diagnosing and subsequently refusing to treat the mole on his nose. It is therefore recommended that Defendant Rogers' motion to dismiss as to the claims regarding the treatment of the mole be denied.

Plaintiff also sufficiently alleges that he has an objectively serious medical need with regard to the hernia, thereby meeting the first requirement of the analysis. Plaintiff alleges the following facts: He suffers from irritable bowel syndrome, for which he was prescribed medication, and a hernia, which can be worsened by his irritable bowel syndrome if he has to strain for a bowel movement; in June and September 2012, Plaintiff was taken off certain medications for his irritable bowel syndrome which resulted in the worsening of his hernia; in June 2013, Defendant Rogers was made aware that Plaintiff had a hernia but refused to provide corrective surgery; and finally in October 2014, sixteen months after Defendant Rogers was first informed of the condition, Plaintiff received the hernia surgery. These facts taken together establish Plaintiff's serious medical need. *See Bingham*, 654 F.3d at 1176 ("A serious medical need is one that has been diagnosed by a physician as mandating treatment[.]").

Plaintiff also alleges that Defendant Rogers discontinued Plaintiff's prescriptions of Colace and lactulose even though there are a number of refills left, Plaintiff's access to Herblax (an over-the-counter laxative), and Plaintiff's snack profile, which provided him with a "bran fiber H.S. snack." Am. Compl. ¶¶ 17, 19, 21. Plaintiff argues that the discontinuation of these medications constitute deliberate indifference to his serious medical need. Defendant Rogers was aware that without these medications and medical

profiles, Plaintiff's irritable bowel syndrome would become inflamed, causing Plaintiff to strain while having a bowel movement and thereby worsen, if not burst, Plaintiff's hernia. Plaintiff concludes that these actions combined with Defendant Rogers' sixteen month delay in approving Plaintiff's hernia surgery, establish his (a) subjective knowledge of serious harm—bursting or worsening of the hernia—that would result from his failure to take the actions Plaintiff requested, (b) an intentional disregard for risk (c) by conduct that amounts to more than mere negligence.

Defendant Rogers responds that Plaintiff fails to establish that he actually needed surgery for his hernia. Defendant Rogers also argues that the discontinuation of the medications and snack profile were matter of medical judgment. The Court disagrees in part. The fact that Defendant Rogers was aware of the hernia for sixteen months and took Plaintiff off medication while Plaintiff still had available refills for that prescription without any medical explanation, combined with the fact that Plaintiff ultimately did require surgery, are sufficient to state a claim for relief against Defendant Rogers for delaying the hernia surgery and for discontinuing lactulose and Colace. However, Defendant Rogers' decisions to terminate Plaintiff's access to the over-the-counter medication Herblax and to deny Plaintiff a fiber snack profile are medical judgments. It is therefore recommended that Defendant Rogers' motion to dismiss be granted in part, dismissing the claims involving the Herblax and snack profile, and denied in part, retaining the claims involving the delay in treating the hernia.

c.    Defendant Fleming

Plaintiff makes the following allegations regarding Defendant Fleming: Because

of the repeated denials of adequate medical care by Defendant Rogers, Plaintiff sought out Defendant Fleming—Warden of Care and Treatment at WSP—to file grievances regarding these issues[19] and to personally discuss Defendant Rogers' actions of delaying the biopsy the nose mole, failing to provide treatment for the mole, delaying the approval of the hernia surgery, and the reoccurring issues with his left ear.   Compl. 9, ¶ 36. Plaintiff's attempts to secure Defendant Fleming's assistance in procuring medical care were fruitless.  *Id.*  Plaintiff contends that in light of the obviousness of the need for medical attention for the serious medical needs of cancer and hernia, Defendant Fleming was deliberately indifferent.  Defendant Fleming, on the other hand, contends that as a lay person and not a medical professional, he was entitled to rely on the judgment of Defendant Rogers, the medical professional.  Br. in Supp. of Fleming, Harrison, & Barrow's Mot. to Dismiss 11 (citing *Lynch v. Jackson*, 478 F. App'x 613, 619 (11th Cir. 2012)).  Specifically, he alleges that Plaintiff fails to allege facts showing that Defendant Fleming, as a lay person, knew surgery or a biopsy was needed to avoid a serious risk of harm and that Defendant Rogers' treatment was so inadequate that intervention was necessary to prevent that harm.  Br. in Supp. of Fleming, Harrison, & Barrow's Mot. to Dismiss 12.

Defendant Fleming's contention that a lay person is entitled to rely on the judgment of the medical professional, although generally true, is unavailing regarding

---

[19] Although Plaintiff does not provide a time frame for when this occurred, it would appear that the grievance Plaintiff is referencing is grievance # 177129—detailing all the allegations regarding Plaintiff's continual denial of adequate medical care—which was submitted on June 26, 2014.  Fleming Aff. Ex. 2, ECF No. 16-4.  At that point, Plaintiff's bleeding nose mole had just recently been biopsied.

Plaintiff's bleeding mole.  "[K]nowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference," even when the Defendant is not a medical professional.  *Carswell v. Bay Cty.*, 854 F.2d 454, 457 (11th Cir. 1988).  Although Defendant Fleming contends that he did not have sufficient knowledge of Plaintiff's need, the Court is not persuaded.  Plaintiff specifically told Defendant Fleming that he had a recent history of cancer (that was still not entirely resolved) and that even though he had been exhibiting symptoms of cancer on his nose for ten months, Defendant Rogers would not conduct a biopsy to determine whether this bleeding mole was cancerous as well.  Taking these allegations as true, Defendant Fleming, even as a lay person, knew that Plaintiff required *some* treatment to address a continually bleeding mole that very likely could be cancerous or at least required a diagnostic exam.  *See*, *e.g.*, *Carswell*, 854 F.2d at 455-57 (finding that there was sufficient evidence to support the jury's verdict that the jail administrator was deliberately indifferent where the jail administrator's decided to do "nothing significant to ensure that [the plaintiff] received medical attention," despite having seen Plaintiff's condition deteriorating even after he was seen by a medical professional, having received requests for medical attention specifically addressed to him from the plaintiff, and having been asked by the plaintiff's lawyer to get a doctor); *Goebert*, 510 F.3d at 1327-1330 (jail administrator was deliberately indifferent for ignoring, without even a cursory investigation, a pretrial detainee's complaints that her pregnancy-related issues were being ignored by the medical staff, that the jail doctor recommended she see an outside doctor, that she had a history of miscarriages, and that

her condition was worsening because "inmates had lied before" and "the '[m]edical staff seem[ed] unconcerned.'").  Plaintiff sufficiently alleges facts supporting an inference that Defendant Fleming was subjectively aware of the risk untreated cancer posed to Plaintiff, that Defendant Rogers was refusing to even attempt to diagnose the condition, and that intervention, as the Warden of Care and Treatment, was necessary to ensure Plaintiff had access to adequate medical care.  As such, it is recommended that Defendant Fleming's motion to dismiss concerning the bleeding mole claims be denied.  However, because Plaintiff does not allege similarly sufficient facts that would have alerted Defendant Fleming as to the need to intervene and provide medical care for the hernia, it is recommended that Defendant Fleming's motion to dismiss concerning the hernia claims be granted.

d.    Defendant Barrow

Plaintiff makes the following allegations regarding Defendant Barrow: After the repeated denials of adequate medical care by Defendant Rogers and Defendant Fleming, Plaintiff "notified" Defendant Barrow of Defendant Rogers' decision to indefinitely delay the cataract surgery.  Am. Compl. ¶ 26.  Defendant Barrow, however, took no action.  *Id.* Plaintiff contends that because Defendant Barrow was notified of the ongoing denial of the cataract surgery but chose to do nothing, he was deliberately indifferent.  Defendant Barrow, like Defendant Fleming, argues that as a lay person, he was entitled to rely on the judgment of Defendant Rogers, the medical professional.  Br. in Supp. of Fleming, Harrison, & Barrow's Mot. to Dismiss 14.  The Court finds that Plaintiff's allegation that he simply "notified" the warden is insufficient to state a claim for relief.

"[L]iability under § 1983 must be based on affirmative unconstitutional behavior and cannot be based upon a mere failure to act." *Way v. McNeil*, No. 5:10cv107, 2012 WL 1463412, at * 4 (N.D. Fla. Mar. 8, 2012) (internal quotations omitted).  A prison official cannot be held liable simply based upon his failure to respond to a letter from a prisoner. *See Ware v. Owens*, No. CV612–056, 2012 WL 5385208, at * 2 (S.D. Ga. Sept. 28, 2012) ("failure to respond to an inmate's letters does not result in a violation of that inmate's constitutional rights"); *Walker v. Pataro*, No. 99CIV.4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr.23, 2002) ("where a supervisory official . . . receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable."); *Greenwaldt v. Coughlin*, 1995 WL 232736, *4 (S.D.N.Y. April 19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation is insufficient to hold that official liable for the alleged violations").  To state a claim against a supervisory official, a prisoner must allege facts showing that the supervisor personally participated in a constitutional violation *or* that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.  *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086-87 (11th Cir. 1986).  Plaintiff's Complaint and Amended Complaint fail to allege any such conduct or connection with regard to Warden Barrow.  Indeed, it is not even clear how Defendant Barrow was notified, whether through a personal discussion or through letters, and therefore from the face of the pleadings, it is unclear whether he was thus personally aware of the denial of care by Defendant Rogers.  Thus, because simply "notifying" a prison administrator and then not receiving a

response or affirmative action is insufficient to state a claim for relief, it is recommended that Defendant Barrow's motion to dismiss be granted.

2.    <em>First Amendment Claims</em>

"It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith*, 532 F.3d at 1276.

As discussed above, Plaintiff asserts First Amendment claims against: (1) Defendant Rogers for his discontinuation of the Herblax, medication, and snack profile, for delaying the hernia surgery, and for delaying the cataract surgery; (2) Defendant Ayers for discontinuing the medications, delaying the hernia surgery, and refusing to approve the ear reconstruction surgery; and (3) Defendant Harrison for labeling Plaintiff as a snitch after he made statements to the warden and the Court about Defendant Harrison's prior harassment.

Defendant Ayers does not present any arguments supporting the contention that Plaintiff fails to state a claim with regard to his retaliation claims. Br. in Supp. of

Rogers' & Ayers' Mot. to Dismiss 14-15.   In fact, while Defendant Ayers briefly mentions Plaintiff's retaliation claims involving the delay in treating the hernia and the refusal to approve the reconstructive surgery on Plaintiff's ear, he fails to even address Plaintiff's allegation that he choose to employ the cryosurgery method in retaliation for Plaintiff filing grievances against him.  *Id.*  And so to the extent Defendant Ayers seeks dismissal of the retaliation claims against him, that motion should be denied.

Similarly, although Defendant Rogers contends that "Plaintiff's Complaint contains no allegations of any . . . motivation for retaliation by Dr. Rogers, or that Dr. Rogers took any adverse action" in retaliation, Defendant Rogers fails to address the retaliation claims asserted in Plaintiff's Amended Complaint.  Br. in Supp. of Rogers' & Ayers' Mot. to Dismiss 15; *see also* Rogers' Suppl. Br. in Supp. of Mot. to Dismiss 1-4, ECF No. 25 (addressing Plaintiff's Amended Complaint, but only arguing dismissal based on exhaustion).   Thus, to the extent Defendant Rogers seeks dismissal of the remaining retaliation claims concerning the discontinuation of the Colace and lactulose,[20] that motion should be denied.

Finally, Defendant Harrison contends that Plaintiff fails to state a claim against him for retaliation.  Br. in Supp. of Fleming, Harrison, & Barrow's Mot. to Dismiss 15-17.  In support of his allegations of retaliation by Defendant Harrison, Plaintiff asserts that after the filing of the complaint, Defendant Harrison made racially charged statements about Plaintiff in front of a number of other inmates, causing "racial unrest"

---

[20] As discussed above, it is recommended that the retaliation claims involving Defendant Rogers delay of the cataract surgery and decision to discontinue Plaintiff's access to Herblax and the snack profile be dismissed.

and subjecting Plaintiff to harassment.  Am. Compl. ¶¶ 4-7.  Plaintiff then submitted a statement regarding the incident to the warden and to the Court.  Am. Compl. ¶ 9.  However, roughly three weeks after the statements were submitted, while Plaintiff and "approximate[ly] 95 other prisoners in E-1 dormitory" were in the cafeteria when Defendant Harrison yelled out, "Y'all got a snitch . . . he in y'all dorm—y'all need to get him out . . . y'all know snitches need to get stiches."  Am. Compl. ¶ 10.  And again the next day, Defendant Harrison made similar statements about the existence of a snitch in the E-1 dormitory, causing "racial unrest, humiliation, threats, etc., and placed [Plaintiff] in position to be assaulted."  Am. Compl. ¶¶ 12-13.  Defendants argue that even taking these allegations as true, because Plaintiff never avers or even implies that Defendant Harrison identified Plaintiff as the "snitch" and because Plaintiff does not sufficiently allege that the prior statements Plaintiff submitted to the warden and the Court "caused" Defendant Harrison to yell about a "snitch" three weeks later, this claim should be dismissed.  Br. in Supp. of Fleming, Harrison, & Barrow's Mot. to Dismiss 16 (citing *Moton v. Cowart*, 631 F.3d 1337 (11th Cir. 2011)).  This Court agrees, and recommends Defendant Harrison's motion to dismiss be granted.

      D.     Qualified Immunity

     In their separate motions to dismiss, Defendants also contend that Plaintiff's claims against them in their individual capacities should be dismissed because they are entitled to qualified immunity.  "Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a

reasonable person would have known." *Anderson v. City of Naples*, 501 F. App'x 910, 915-16 (11th Cir. 2012) (internal quotation marks and citation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Id.* Once the defendant shows that he or she was acting within her discretionary authority, the burden then shifts to the plaintiff to establish that qualified immunity does not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004). It is clear and undisputed that all of the Defendants were acting within their discretionary authority. *See, e.g., Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (explaining that "discretionary authority" includes "all actions of a government official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority) (internal quotation marks and citation omitted). Because that determination is made, the burden then shifts to Plaintiff to show that the Defendant is not entitled to qualified immunity. "To overcome an official's claim of qualified immunity, the plaintiff must show that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the alleged violation." *Anderson*, 501 F. App'x at 916

(citation omitted).[21]

As found above, Plaintiff has alleged the violation of a constitutional right.  The Court must therefore determine whether that right was clearly established.  "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right."  *Reichle v. Howards*, -- U.S. --, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citation omitted) (alteration in original).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* (internal quotation marks and citation omitted).  The Eleventh Circuit has explained that:

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013).  Furthermore, "[t]he inquiry whether a federal right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks and citation omitted).  "The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted."  *Id.* (quotation marks and citation omitted) (emphasis and alteration in original).  The court should look "only to binding precedent—cases from the

---

[21] Courts should use their discretion in determining which prong of the qualified immunity inquiry to address first.  *McCullough*, 559 F.3d at 1205.

United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation."  *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).

Several Eleventh Circuit cases are instructive here.  Binding authority describes different scenarios which amount to deliberate indifference. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  Examples relevant to this case include: having knowledge of an inmate's need for medical care and refusing to provide the care, *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997), *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989), *Carswell v. Bay Cty.,* 854 F.2d 454, 457 (11th Cir. 1988); delaying the treatment of serious medical needs, *Harris v. Coweta Cty.*, 21 F.3d 388, 393-94 (11th Cir. 1994), *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990); and providing grossly inadequate care or taking an easier or less efficacious course of treatment.  *See*, *e.g.*, *Steele v. Shah*, 87 F.3d 1266, 1269-70 (11th Cir. 1996); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1985).

### 1.    *Defendants Ayers and McClarin*

Accepting Plaintiff's allegations as true, Defendants Ayers and McClarin provided ineffective treatment for cancerous moles solely in an effort to save money.  Defendants' delay in treating and subsequent cursory treatment necessitated the detachment and reattachment of Plaintiff's left ear.  These actions fit squarely into the Eleventh Circuit examples listed above.  Plaintiff alleges a violation of a clearly established constitutional right, and Defendants Ayers and McClarin are not entitled to qualified immunity at the

dismissal stage.   Defendants Ayers' and McClarin's motion to dismiss should be denied.[22]

### 2.   *Defendant Rogers*

Similarly, taking Plaintiff's allegations as true, Defendant Rogers unreasonably delayed in diagnosing and treating Plaintiff's second bleeding mole; worsened Plaintiff's hernia condition by declining to provide needed medications; then delayed Plaintiff's hernia surgery itself; and delayed Plaintiff's cataract surgery all without any medical explanation.   These actions fit squarely into the Eleventh Circuit examples listed above. Plaintiff alleges a violation of a clearly established constitutional right, and Defendant Rogers is not entitled to qualified immunity at the dismissal stage.   Defendants' motion to dismiss should be denied with respect Defendant Rogers.[23]

### 3.   *Defendant Fleming*

Finally, as to Plaintiff's Eighth Amendment failure to act claim against Defendant Fleming, Plaintiff contends that Defendant Fleming knew that Plaintiff had been diagnosed with cancer and knew that Defendant Rogers—Plaintiff's primary care doctor—refused for ten months to even have a bleeding mole biopsied despite Plaintiff's recent history of cancerous moles and then refused to provide treatment for that cancer. This refusal to act is directly analogous to the caselaw discussed above.   *See Carswell*,

---

[22] Defendant Ayers fails to present any argument regarding his entitlement to qualified immunity for the inadequate treatment of the hernia and for the other retaliation claims.   To the extent Defendant Ayers' seeks to those claims dismissed, it is recommended that the motion to dismiss be denied.

[23] Defendant Rogers does not present any arguments supporting the contention that he is entitled to qualified immunity for the retaliation claims.   Br. in Supp. of Rogers' & Ayers' Mot. to Dismiss 14-15.   To the extent Defendant Rogers seeks dismissal of the retaliation claims against him, that motion should be denied.

854 F.2d at 455-57; *see also Goebert*, 510 F.3d at 1329-1331(holding that *Carswell* sufficiently placed the administrator defendant on notice that disbelieving a pretrial detainee's complaints about issues with her pregnancy and refusing to even investigate because the medical staff seemed unconcerned constituted deliberate indifference). Plaintiff alleges a violation of a clearly established constitutional right, and Defendant Fleming is not entitled to qualified immunity at the dismissal stage.  Defendants' motion to dismiss should be denied with respect Defendant Fleming.

## II.    Plaintiff's Motion for Preliminary Injunction

In his motion for preliminary injunction, Plaintiff alleges that since the filing of the complaint, he has "been subjected to repeated incidents of retaliation for exercising his rights herein and the retaliation has escalated to a point where he will suffer irreparable harm without an injunction."  Mot. for Prelim. Inj. ¶ 1, ECF No. 38.  Plaintiff also states that Defendant Rogers has continued to retaliate against him by refusing to provide him with "needed medications, profiles, surgery, etc. which were ordered prior to the filing of the complaint" and that because Defendant Rogers has continued to delay the cataract surgery, "plaintiff is now legally blind, and plaintiff's minimal eyesight is steadily decreasing."  Mot. for Prelim. Inj. ¶¶ 2-3.  Plaintiff requests that this Court enjoin any such further retaliatory actions, as these actions are placing him "at risk of severe injuries and possible death."  *Id.* at ¶¶ 4-5.  Injunctive relief is only appropriate where the movant demonstrates that: (a) there is a substantial likelihood of success on the merits; (b) the preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that a preliminary injunction would cause to the non-movant;

and (d) the preliminary injunction would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001). An irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted).

Preliminarily, in seeking to enjoin Defendants from retaliating against him, Plaintiff is essentially requesting an "obey-the-law" injunction. This circuit has repeatedly held that "obey-the-law" injunctions cannot satisfy the specificity requirements of Federal Rule of Civil Procedure 65(d) and thus are unenforceable. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (holding that an injunction prohibiting a municipality from discriminating on the basis of race in its annexation decisions "would do no more than instruct the City to 'obey the law,' . . . and . . . would be incapable of enforcement"). For this reason, Plaintiff's motion for injunctive relief should be denied.

Additionally, Plaintiff has failed to establish a "substantial likelihood of success on the merits" and the necessity of injunctive relief to prevent irreparable injury. As it is recommended that Plaintiff's claims relating to Defendant Rogers' delay in providing cataract surgery be dismissed, Plaintiff cannot establish that this claim is substantially likely to succeed on the merits. Furthermore, to the extent Plaintiff seeks to enjoin Defendant Rogers' alleged withholding of prescription medications, Plaintiff has failed to establish that he is likely to succeed on the merits and that an injunction is necessary to prevent irreparable harm. Although Plaintiff's allegations that Defendant Rogers is denying him access to his prescribed medications are sufficient to permit these claims to

proceed past the motion to dismiss stage, such unsubstantiated statements are insufficient to carry the weighty burden necessary to merit injunctive relief.  Plaintiff fails to produce any medical records or other documentation indicating the harm he faces if Defendant Rogers continues to withhold access to these medicines or to otherwise support the merits of his claims.  Accordingly, it is recommended that Plaintiff's motion for injunctive relief (ECF No. 38) be denied.

## III.    Plaintiff's Motions for Judicial Notice

Plaintiff filed motions requesting the Court take judicial notice of the fact that Plaintiff's "jailhouse lawyer" was transferred to another facility and that Plaintiff has not received certain filings because Defendants tampered with his legal mail.  (ECF Nos. 48 & 50.)  However, Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(c)(1-2).  The fact that Plaintiff's jailhouse lawyer was transferred to another facility and/or that Plaintiff failed to receive certain filings are not facts that are generally known nor are they facts from a source whose accuracy cannot reasonably be questioned.  Both motions for judicial notice are consequently denied.

## CONCLUSION

For the reasons explained above, it is recommended that Defendants Ayers and Rogers' motion to dismiss (ECF No. 16) be granted in part, dismissing the First and Eighth Amendment claims against Defendant Rogers for the delay in providing the

48

cataract surgery and for discontinuing Plaintiff's access to Herblax and the snack profile, and denied in part, retaining all claims against Defendant Ayers and all other claims against Defendant Rogers.  It is further recommended that Defendant McClarin's motion (ECF No. 23) be denied and Defendants Barrow, Fleming, and Harrison's motion (ECF No. 43) be granted in part, dismissing Defendants Barrow and Harrison, and denied in part, retaining the claims against Defendant Fleming for failure to provide adequate medical care for the bleeding nose mole.  It is also recommended that Plaintiff motion for a preliminary injunction (ECF No. 38) be denied and it is hereby ordered that Plaintiff's motions for judicial notice (ECF Nos. 48, 50) are denied.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof.  The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made.  All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 5th day of February, 2016.

S/Stephen Hyles
UNITED STATES MAGISTRATE JUDGE